833 N.E.2d 519 (2005)
D.G.B., Appellant-Respondent,
v.
STATE of Indiana, Appellee-Petitioner.
No. 48A04-0412-JV-700.
Court of Appeals of Indiana.
August 31, 2005.
*521 James M. Nave, Indianapolis, for Appellant.
Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, for Appellee.

OPINION
CRONE, Judge.

Case Summary
D.G.B. appeals the juvenile court's true finding that he was a delinquent child for committing child molesting,[1] a class A felony if committed by an adult, and intimidation,[2] a class D felony if committed by an adult. We affirm.

*522 Issue
D.G.B. raises three issues, which we consolidate and restate as whether the juvenile court abused its discretion in admitting the victim's out-of-court statements.

Facts and Procedural History
On March 8, 2004, fifteen-year-old D.G.B. lived in Anderson with his father, Roy Bradberry; his brother; his father's girlfriend, Iketrica Marlow; and her two daughters, one of whom is the victim in this case, six-year-old F.N. On that day, nineteen-year-old Cory Craig, a family friend, was also present at D.G.B.'s house. In the early afternoon, Bradberry and Marlow left D.G.B. to care for F.N. while they took D.G.B.'s brother to enroll him in school. Bradberry and Marlow asked Craig to leave while they were absent from the house, and he did so. Sometime later, Bradberry and Marlow returned to pick up D.G.B. to enroll him in school. F.N. accompanied them.
Approximately one hour after the group returned home, F.N. began to cry and informed Marlow that something was wrong. Marlow took F.N. into a bedroom and discovered that she was bleeding profusely from her vagina. Marlow also discovered that F.N. was not wearing underwear, although she had been wearing underwear when Marlow dressed her earlier that day. Marlow also noted that the clothes F.N. was wearing were different from those in which Marlow had dressed her. Marlow attempted to stop the bleeding but was unable to do so. Marlow informed Bradberry that she was going to take F.N. to the hospital. Craig, who had returned to the house, overheard the comment and immediately ran out of the residence. Marlow asked D.G.B. what happened to F.N. D.G.B. told Marlow that F.N. injured herself when she fell on the couch while he and Craig were horseplaying with her and spreading her legs.
Marlow took F.N. to the hospital, where a doctor examined F.N. and discovered that she had a tear to her vagina that did not appear to be the result of a "straddle" injury. Tr. at 120. F.N. underwent surgery to repair the tear and spent the night in the hospital. The following morning, Marlow visited F.N. in her hospital room while she was having breakfast. Marlow noticed that F.N. had pushed her fork and knife to the side. Marlow asked F.N. what was wrong. F.N. was very upset but explained that D.G.B. and Craig had held her down and spread her legs, and that D.G.B. had inserted a fork and Craig a knife in her vagina. F.N. said that D.G.B. had changed her clothes because there was blood on them and then stuffed the soiled clothes in the bathroom. She also explained that D.G.B. and Craig had washed the knife and fork and placed them back in the utensil drawer. Finally, she told Marlow that D.G.B. and Craig had told her that if she said anything to anyone about what they had done, they would burn her on a grill and feed her to Craig's dog.
That evening, Marlow took F.N. to the Anderson Police Department for an interview with Detective Larry Crenshaw. Initially, F.N. refused to speak to Detective Crenshaw. However, when Detective Crenshaw left the room, F.N. repeated her previous account of the molestation to Marlow. Detective Crenshaw returned to the room, and F.N. gave the same explanation to him. F.N.'s statements to Marlow and Detective Crenshaw were videotaped. On March 19, 2004, the State filed a petition alleging that D.G.B. was a delinquent child for the following: (1) child molesting, a class A felony if committed by an adult; (2) criminal deviate conduct, a class A felony if committed by an adult; (3) confinement, a class B felony if committed by an *523 adult; and (4) intimidation, a class C felony if committed by an adult.
On August 18, 2004, the State filed a petition pursuant to Indiana Code Section 35-37-4-6 requesting a hearing to determine the admissibility of F.N.'s out-of-court statements to Marlow and Detective Crenshaw.[3] On August 20, 2004, the juvenile court held an admissibility hearing. Dr. Bonnie Huxford, a state-certified HSPP (health service provider in psychology) testified that F.N. would be traumatized if she were required to testify at trial. Marlow testified as to the content of F.N.'s statements to her at the hospital and at the police department. Detective Crenshaw also testified regarding the statement F.N. provided to him at the police department. F.N. also took the stand to testify. However, she immediately turned away from the juvenile court and covered her ears. The juvenile court attempted to administer the oath, but F.N. was completely unresponsive. After a minute or a minute and a half, the juvenile court excused F.N., and she left the room. Thereafter, defense counsel objected that he had not been afforded an opportunity to cross-examine F.N. At the close of the hearing, the State tendered the videotape of F.N.'s statements to Marlow and Detective Crenshaw at the police department. The juvenile court directed that defense counsel first review the tape to preserve any additional objections before the court reviewed the tape. On October 8, 2004, the juvenile court granted the State's petition to admit F.N.'s out-of-court statements to Marlow and Crenshaw.
On October 15, 2004, the juvenile court held a factfinding hearing. The State offered the transcript of the admissibility hearing to introduce F.N.'s out-of-court statements to Marlow and Detective Crenshaw. D.G.B. objected that F.N.'s statements were inadmissible on two grounds: (1) that Indiana Code Section 35-37-4-6 was applicable only in criminal proceedings and not in juvenile proceedings; and (2) that D.G.B had not been afforded his Sixth Amendment right to cross-examine F.N. The juvenile court overruled the objection and admitted the transcript.[4]
On November 5, 2004, the juvenile court entered a true finding that D.G.B. committed child molesting and intimidation and dismissed the other charges. At the dispositional hearing on December 9, 2004, the juvenile court was informed that D.G.B. intended to appeal and was doing well in his current placement at the Youth Opportunity Center ("YOC"). The juvenile court ordered that D.G.B. remain at *524 YOC and delayed final disposition pending the resolution of the appeal.[5]

Discussion and Decision
D.G.B. claims that the juvenile court erred in admitting F.N.'s out-of-court statements. Our standard of review is well settled:
[T]he decision to admit or exclude evidence is within a trial court's sound discretion and is afforded great deference on appeal.... [W]e will not reverse the trial court's decision unless it represents a manifest abuse of discretion that results in the denial of a fair trial. An abuse of discretion in this context occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law.
Carpenter v. State, 786 N.E.2d 696, 702-03 (Ind.2003) (citations omitted).
In support of his claim that F.N.'s out-of-court statements were inadmissible, D.G.B. presents the following arguments: (1) Indiana Code Section 35-37-4-6 does not apply to juvenile proceedings; (2) even if Indiana Code Section 35-37-4-6 is applicable to juvenile cases, its requirement that the person who made the statement be available for cross-examination was not satisfied; and (3) his Sixth Amendment right of confrontation was violated. We address each argument separately.

A. Applicability of Indiana Code Section 35-37-4-6 to Juvenile Proceedings
D.G.B. contends that F.N.'s statements were inadmissible because Indiana Code Section 35-37-4-6, also known as the "Protected Person Statute," is applicable only to criminal cases and not to juvenile proceedings, which are civil in nature. In his reply brief, D.G.B. acknowledges that a panel of this Court has already addressed this issue and concluded that the statute is applicable to juvenile proceedings. See J.V. v. State, 766 N.E.2d 412, 415 (Ind.Ct.App.2002), trans. denied. However, D.G.B. requests that we re-examine the holding in J.V. and urges us not to follow it because the statute by its own terms does not apply in juvenile proceedings.
Having examined our previous holding in J.V., we are persuaded by that panel's analysis:
[J]uvenile proceedings are civil in nature and ... an act of juvenile delinquency is not a crime. Nonetheless, a child alleged to be delinquent is charged by the State with an act that would be a crime if committed by an adult. The criminal standard of proof remains, in that the State must prove the delinquent act beyond a reasonable doubt to achieve a true finding of delinquency. Put another way, it is the child's age and not the status, nature or class of offense that removes the case from our adult criminal system. Moreover, our supreme court has observed that the goal of the protected person statute is to reduce the child's emotional trauma caused by numerous court appearances, not to guarantee that the child will never have to face the defendant. Thus, we see no *525 compelling reason to exclude application of the protected person statute in these circumstances, and we decline to read that statute so narrowly as to render the protected person statute inapplicable in delinquency proceedings.
Id. at 415-16 (citations and quotation marks omitted). Therefore, we decline to depart from our holding in J.V., and we reject D.G.B.'s argument that F.N.'s out-of-court statements were inadmissible because the Protected Person Statute is inapplicable to juvenile proceedings.

B. Indiana Code Section 35-37-6-4 Availability Requirement
D.G.B. next argues that even if the Protected Person Statute applies to juvenile proceedings, F.N.'s out-of-court statements were inadmissible because the statute's requirements were not completely satisfied. Specifically, D.G.B. argues that F.N. was not available for cross-examination at the admissibility hearing. See Ind.Code § 35-37-4-6(f). The State contends that D.G.B. waived this argument because his objection to the admissibility of F.N.'s out-of-court statements at the factfinding hearing did not include this reason as a ground for inadmissibility. "It is well-settled law in Indiana that a defendant may not argue one ground for objection at trial and then raise new grounds on appeal." Burnett v. State, 815 N.E.2d 201, 207 (Ind.Ct.App.2004). Accordingly, we agree with the State that D.G.B. procedurally defaulted this claim by failing to raise it at the factfinding hearing.
Despite this waiver, we will address D.G.B.'s claim that F.N. was not available for cross-examination at the admissibility hearing and that her out-of-court statements were therefore inadmissible. Initially, we note that our supreme court has held that a defendant must have an opportunity to cross-examine the victim for the Protected Person Statute to comply with the Indiana Constitution. Miller v. State, 517 N.E.2d 64, 73 (Ind.1987) ("Miller I"); see also Pierce v. State, 677 N.E.2d 39, 49 (Ind.1997). Thus, the statute requires that the accused be afforded full right to cross-examine and confront the witness, which includes the opportunity for a physical, immediate face-to-face confrontation. Miller v. State, 531 N.E.2d 466, 470 (Ind.1988) ("Miller II"). Cross-examination at the admissibility hearing prevents admission of untrustworthy evidence by affording a defendant an opportunity to reveal weaknesses or inconsistencies in the child's memory or explanation of events. Pierce, 677 N.E.2d at 49-50.
Here, F.N. took the stand at the admissibility hearing. The juvenile court attempted to administer the oath, but F.N. was unresponsive. She turned away from the court and put her hands over her ears. The juvenile court was unable to administer the oath and permitted F.N. to leave the room. Under these circumstances, we cannot conclude that F.N. was available for cross-examination at the admissibility hearing. But see Pierce, 677 N.E.2d at 48 (stating that victim was available for cross-examination where victim took the stand at pretrial hearing and was briefly examined by the State but defense made no effort to question victim, made no objection at pretrial hearing, and made no request to examine victim before next witness was called); see also Rickey v. State, 661 N.E.2d 18, 22 (Ind.Ct.App.1996) (stating that victim was available for cross-examination where defense counsel questioned victim as to whether victim understood the difference between the truth and a lie, victim refused to answer verbally, and defendant informed trial court that he had no other questions), trans. denied (1997).
Although we have concluded that F.N.'s out-of-court statements were *526 not properly admissible pursuant to the Protected Person Statute, we agree with the State that there is one statement F.N. made that is admissible without reference to the Protected Person Statute. Specifically, F.N.'s statement to Marlow at the hospital falls within the "excited utterance" exception to the hearsay rule. See Ind. Evidence Rule 803(2). Hearsay is a statement made out-of-court that is offered to prove the fact or facts asserted in the statement itself. Ind. Evidence Rule 801(c). Hearsay is not admissible unless it fits within some exception to the hearsay rule. Ind. Evidence Rule 802.
For a hearsay statement to be admitted as an excited utterance, three elements must be shown: (1) a startling event occurs; (2) a statement is made by a declarant while under the stress of excitement caused by the event; and (3) the statement relates to the event. Application of these criteria is not mechanical. Rather, under Rule 803(2) ... the heart of the inquiry is whether the statement is inherently reliable because the declarant was incapable of thoughtful reflection. The statement must be trustworthy under the facts of the particular case.

Yamobi v. State, 672 N.E.2d 1344, 1346 (Ind.1996) (citations omitted) (emphasis added).
Here, the first and third elements are easily satisfied. A startling event occurred when F.N. suffered a particularly heinous molestation involving the mutilation of her genitalia and was threatened by her molesters that she would be burned on a grill and fed to a dog. F.N.'s statement to Marlow at the hospital related to the startling event. The second element, whether the statement was made by the declarant while still under the stress of excitement caused by the event, requires a more careful analysis. After the molestation, F.N. discovered that she would not stop bleeding. Thus, the stress of the molestation had not ended for F.N., and she had to be taken to the emergency room at the hospital. There, she had to undergo surgery to repair the injury resulting from her molestation. The surgery itself would be frightening and stressful for a six-year-old child who was completely unprepared for the procedure. Presumably, F.N. was anesthetized for the surgery. When she woke up after surgery, she was confronted with the alarming appearance of a knife and fork, the very instruments that had been used to inflict injury upon her. The record reveals that F.N. was visibly upset when she saw the knife and fork and remained upset as she related the account of her molestation to Marlow. Under these unique circumstances, we conclude that the stress of the excitement caused by such a traumatic molestation continued until the time F.N. awoke after surgery and gave her account of the molestation to Marlow. Furthermore, based upon F.N.'s young age and the fact that she had to undergo surgery, it is unlikely that she was capable of thoughtful reflection in order to fabricate her story.
We recognize that the interval between the molestation and F.N.'s statement at the hospital is longer than what has been considered allowable for the excited utterance exception. However, our supreme court has stated:
While a declaration is generally less likely to be admitted if it is made long after the startling event, the amount of time that has passed is not dispositive... [T]he central issue is whether the declarant was still under the stress of the excitement caused by the startling event when the statement was made.
Hammon v. State, 829 N.E.2d 444, 449 (Ind.2005) (quoting Yamobi, 672 N.E.2d at *527 1346). Our supreme court noted that the excited utterance exception was properly applied to a statement made as much as thirty minutes after the event where the declarant was shot on the street and remained there wounded until police arrived. Id. (citing Yamobi, 672 N.E.2d at 1346-47). In Yamobi, the record revealed that the time period between the shooting and the statement was between thirty minutes to one hour. 672 N.E.2d at 1347. The supreme court went on to state that under less stressful events, such a lengthy time period might not qualify for the excited utterance exception. Hammon, 829 N.E.2d at 449; see, e.g., Davenport v. State, 749 N.E.2d 1144, 1149 (Ind.2001) (concluding that a statement made by a witness one-half hour after the discovery of the body was not made under the stress of the startling event.). We are convinced that a six-year-old child who suffered the abhorrent molestation that F.N. suffered here would remain under the stress of excitement caused by this event for much longer than the adults mentioned by our supreme court in Hammon.
While we emphasize that our decision is based upon the unique facts of this case and should not be interpreted as a modification or extension of the excited utterance rule, we do find support for our decision. In Lieberenz v. State, 717 N.E.2d 1242 (Ind.Ct.App.1999), trans. denied, we affirmed the trial court's decision to admit statements that a rape victim made to relatives and police even though several hours had elapsed between the rape and the victim's statements. Id. at 1246. We based our decision on the descriptions of the victim's physical and psychological state and whether she was capable of thoughtful reflection and deliberation in order to fabricate her story. Id. Because the victim was still visibly shaken and unable to speak clearly to police and relatives until several hours after the rape, we concluded that the chances of thoughtful, deliberate falsifications were highly unlikely. Id. Similarly, the facts of this case lead us to conclude that, even though many hours had passed since her molestation, F.N. was still under the stress of excitement caused by that particularly hideous event and was unlikely to make deliberate falsifications, and therefore, her statement to Marlow at the hospital was inherently reliable. Accordingly, the statement F.N. made to her mother at the hospital was properly admissible as an "excited utterance."
We cannot agree, however, with the State's argument that F.N.'s statements to Marlow and Detective Crenshaw at the police department were also admissible under the "excited utterance" exception to the hearsay rule. Even though these statements related to the startling event suffered by F.N., F.N. had spent the day resting, had been released from the hospital, and an entire day had passed since the event took place. Thus, we cannot conclude that F.N. was still under the stress of excitement caused by the event. However, any error in the admission of these statements was harmless because they were merely cumulative of F.N.'s properly admitted statement to Marlow at the hospital. See Iqbal v. State, 805 N.E.2d 401, 406 (Ind.Ct.App.2004) ("Any error caused by the admission of evidence is harmless error for which we will not reverse a conviction if the erroneously admitted evidence was cumulative of other evidence appropriately admitted.").

C. Sixth Amendment Right
Lastly, D.G.B. argues that the admission of F.N.'s out-of-court statement to Detective Crenshaw violated his Sixth Amendment right to cross-examine the witnesses against him according to the United States Supreme Court's decision in *528 Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).[6] In Crawford, the Supreme Court held that a "testimonial" statement was inadmissible where the defendant had no opportunity to cross-examine the person who made the statement.[7] Our supreme court recently examined Crawford and its implications for the admissibility of out-of-court statements in Indiana courts. See Hammon, 829 N.E.2d 444. The Hammon court defined a testimonial statement as follows:
[A] "testimonial" statement is one given or taken in significant part for purposes of preserving it for potential future use in legal proceedings. In evaluating whether a statement is for purposes of future legal utility, the motive of the questioner, more than that of the declarant, is determinative, but if either is principally motivated by a desire to preserve the statement it is sufficient to render the statement "testimonial." If the statement is taken pursuant to established procedures, either the subjective motivation of the individual taking the statement or the objectively evaluated purpose of the procedure is sufficient.
Id. at 456.
In this case, we agree with D.G.B. that F.N.'s statement to Detective Crenshaw was a testimonial statement. Detective Crenshaw took F.N.'s statement as part of an official investigation and made the videotape for possible use in an official prosecution. Tr. at 60-61. Thus, according to Crawford and Hammon, F.N.'s statement to Detective Crenshaw was inadmissible unless D.G.B. was afforded an opportunity to cross-examine F.N. consistent with the Sixth Amendment. In our analysis of the Protected Person Statute, we concluded that F.N. was not, in fact, available for cross-examination at the admissibility hearing. That analysis and conclusion are applicable here. See Pierce, 677 N.E.2d at 48 n. 13 ("Indiana's statutory and constitutional right to confront an unavailable child victim is more generous than its federal constitutional counterpart."); see also Gardner v. State, 641 N.E.2d 641, 643 (Ind.Ct.App.1994) ("Indiana's right of confrontation can be said to encompass the federal right which only guarantees an opportunity to cross-examine witnesses."). Therefore, F.N.'s statement to Detective Crenshaw was inadmissible. Accordingly, the juvenile court abused its discretion in admitting this statement.
Nonetheless, a denial of the right of confrontation is harmless error where the evidence supporting the conviction is so convincing that a jury could not have found otherwise. Garner v. State, 777 N.E.2d 721, 725 (Ind.2002). In this case, the properly admitted evidence meets this standard. F.N.'s statement to Marlow at the hospital was properly admissible under the excited utterance exception to the hearsay rule. Furthermore, the doctor who performed F.N.'s surgery testified that the injury was consistent with penetration of the vagina with a knife or a fork and did not appear to be the result of a "straddle" injury. Tr. at 120. Finally, it was uncontested that F.N. was in D.G.B.'s care and custody when she sustained her injury. Thus, although the trial court *529 erred by admitting F.N.'s statement to Detective Crenshaw, that error was harmless beyond a reasonable doubt.

Conclusion
We conclude that Indiana Code Section 35-37-4-6 is applicable to juvenile proceedings. However, the statute's requirement that F.N. be available for cross-examination at the admissibility hearing was not satisfied, and therefore the juvenile court abused its discretion in admitting F.N.'s out-of-court statements pursuant to the statute. However, F.N.'s statement to Marlow at the hospital was admissible as an excited utterance. Thus, any error in admitting F.N.'s statements at the police department was harmless. Finally, the juvenile court abused its discretion in admitting F.N.'s testimonial statement to Detective Crenshaw because D.G.B. was not afforded his Sixth Amendment confrontation right. However, this error was harmless. Accordingly, we affirm the juvenile court's true findings.
Affirmed.
DARDEN, J., and MATHIAS, J., concur.
NOTES
[1] Ind.Code § 35-42-4-3.
[2] Ind.Code § 35-45-2-1.
[3] Indiana Code Section 35-37-4-6 provides, in relevant part, that an otherwise inadmissible statement or videotape made by a protected person (a child under fourteen years of age or a mentally disabled individual) is admissible in criminal actions involving sex crimes defined in Indiana Code Chapter 35-42-4 if certain conditions are met: (1) the court must find, in a hearing attended by the protected person and outside the presence of the jury, that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability; (2) the protected person must either testify at the trial or be found unavailable as a witness; (3) if the protected person is found to be unavailable as a witness, the protected person must be available for cross-examination at the hearing or when the statement or videotape was made; and (4) the defendant must be notified at least ten days before trial that the prosecuting attorney intends to introduce the statement or videotape and the contents of the statement or videotape. In addition, the statute provides for jury instructions and permits a defendant to introduce a transcript or videotape of the hearing into evidence at trial.
[4] It is unclear from the record before us whether the videotape containing the statements F.N. made to Marlow and Detective Crenshaw at the police department was actually offered and admitted into evidence.
[5] On June 17, 2005, the State filed a motion to strike an argument from D.G.B.'s reply brief. Specifically, the State requested that we strike D.G.B's argument that his counsel's failure to object to F.N.'s out-of-court statements on the ground that the requirements of Indiana Code Section 35-37-6-4 had not been satisfied was fundamental error and constituted ineffective assistance of counsel. The State correctly asserted that D.G.B. had not raised this argument in his appellant's brief and that the purpose of a reply brief is to respond to appellee's arguments and not to raise new issues. See Indiana Appellate Rule 46(C); Bradshaw v. State, 759 N.E.2d 271, 273 n. 2 (Ind.Ct.App.2001). On June 30, 2005, we granted the State's motion.
[6] D.G.B. does not make a claim that the Indiana Constitution's Confrontation Clause was violated. Neither does D.G.B. make a Sixth Amendment claim with regard to F.N.'s statements to Marlow.
[7] While D.G.B. does not make a claim that the Protected Person Statute does not satisfy Crawford, the implications of Crawford for the constitutionality of the statute are unclear. Despite the statute's requirement that the victim be available for cross-examination at the admissibility hearing, Crawford may require that the victim also be available for cross-examination at trial.