**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JENNIFER A. JOAS**
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TREVOR NASH TICE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 15A01-1307-CR-301 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

### APPEAL FROM THE DEARBORN CIRCUIT COURT
The Honorable James D. Humphrey, Judge
Cause No. 15C01-1209-FB-45

**June 17, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Trevor Nash Tice appeals his conviction and sentence for child molesting as a class B felony. Tice raises three issues, which we revise and restate as:

I. Whether the court abused its discretion or committed fundamental error in admitting evidence of out-of-court statements and videotaped interviews;

II. Whether the prosecutor committed misconduct during closing argument which resulted in fundamental error; and

III. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On June 11, 2012, Tice, then nineteen years old, babysat his nephew C.P., then two years and ten months old. Tice lived with his mother Sherry next door to C.P. and Karen, who was C.P.'s mother and Tice's sister. Karen and Tice had a close relationship and saw each other nearly every day. Members of Karen's family, including Tice, frequently babysat C.P. while Karen and her husband, who was C.P.'s father, worked, and that day her niece was supposed to babysit, but Tice babysat instead.

On June 15, 2012, upon returning from a family outing Karen was changing C.P.'s pants when C.P. told her that his "butt hurt." Transcript at 279. Karen thought the statement was strange and she asked him why, and C.P. put his head down and stopped talking. Karen asked C.P. if somebody had touched him and C.P. said "yes." Id. at 281. Upon hearing this, Karen left C.P. to play with toys while she composed herself, and when she returned she asked C.P. who had touched him and named family members, including herself and her husband. C.P. said "no" to all the names until Karen named

2

Tice, to which C.P. replied "yes." Id. at 283. Karen then asked what Tice did, and C.P. replied: "He stuck a pencil in my butt." Id. C.P. also told Karen that "[h]e put his finger in my butt and it smells good," meaning that Tice "said 'that it smelled good.'" Id. Karen phoned Sherry, Sherry asked if Karen wanted her to come over, and Karen told her no and that she wanted to "let it go for now and just try to wrap [her] head around it." Id. at 284. Later, before putting C.P. to bed, Karen assisted C.P. in the bathroom and "casually" examined his buttocks for signs of injury but did not observe any, and C.P. did not complain again of pain after that evening. Id.

The next morning, Sherry visited Karen's house and spoke with C.P. While watching cartoons with C.P., Sherry asked C.P. if he loved various members of the family, and after going through several names she asked C.P. if he loved Tice, to which C.P. replied "no." Id. at 358. Sherry asked C.P. why he did not love Tice, and C.P. responded: "Because he stuck a pencil in my butt." Id. Sherry then told C.P., "[w]ell, that wasn't very nice," and C.P. put a blanket over his head and "kind of shut down." Id. at 359.

That evening, after her husband returned home, Karen told him what C.P. had said, and they decided to go to the police station. Karen asked the police whether they should take C.P. to the hospital and was told that it was not necessary as there were no signs of injury and, at that point, they did not know when the incident had occurred. After leaving the police station, Karen learned from her niece that Tice had watched C.P. on June 11, 2012. Karen then contacted Detective Travis Pendergast to inform him of this.

3

Detective Vernon McBride scheduled an interview for C.P. at the Child Advocacy Center on June 20, 2012. At the interview, the interviewer asked C.P. to identify certain body parts on an anatomical drawing, and when the interviewer asked C.P. to identify the buttocks, C.P. stopped responding to questions, lay down on the floor, and covered his head with a blanket. The interviewer attempted to engage C.P. after bringing Karen into the room, but C.P. crawled under a chair and covered his head with his blanket when Tice was mentioned. They decided to conclude the interview, and Detective McBride instructed Karen and her husband to not discuss the topic with C.P. Later, on July 10, 2012, a second interview was held, but shortly after the interview began C.P. left the room and would not engage with the interviewer even after she brought Karen into the room.

Meanwhile, in the days following June 15, 2012, Sherry told Tice that he needed to leave her home. Sherry did not reveal C.P.'s statements to Tice and instead "made something up because [she] knew he would not believe [she] was . . . making him leave for no reason" and "told him it was because he . . . told [her] that he got suspended . . . from a job and that he . . . got fired . . . ." Id. at 365. Tice responded "through the whole conversation" that "I didn't do anything, but I didn't do anything," and before leaving he stated: "I just want you to know, just so you know, I didn't do anything." Id. On June 21, 2012, Detective McBride interviewed Tice in which Tice initially indicated that he had not "been around [C.P.] for quite some time" and "that he was out of town" on or about June 11, 2012, but he later admitted that he had watched C.P. on June 11, 2012, for about two or three hours. Id. at 401.

4

On September 18, 2012, the State charged Tice with child molesting as a class B felony. On March 8, 2013, the court held a hearing on the admissibility of child hearsay during which C.P. testified and was subjected to cross-examination, and on March 19, 2013, the court issued an order determining admissibility of child hearsay finding that C.P. was a protected person pursuant to Ind. Code § 35-37-4-6, that he was competent to testify and that certain statements, including those made at the March 8, 2013 hearing, as well as statements made to Karen, Sherry, and Karen's sister Sarah, and the videotaped interviews held on June 20 and July 10, 2012, were reliable, noting that "time, content and circumstances of the statements and non-verbal assertions and video-tape interviews of the child . . . provide sufficient indications of reliability to allow admissibility pursuant to Indiana Code 35-37-4-6." Appellant's Appendix at 103. The court also noted in its order that the "statements were substantially volunteered by" C.P., that "[t]hose asking the questions were not unduly suggestive," and that specifically regarding the questions in which "a list of names was stated to [C.P.] it does not appear that the persons suggested the name of" Tice. Id.

On March 26, 2013, the court commenced a jury trial in which evidence consistent with the foregoing was presented. At trial, the videotaped interviews with C.P. were played, and C.P., Karen, Sherry, and C.P.'s father all testified. Karen testified, among other things, that some time following June 15, 2012, she observed C.P. stick a toy in his buttocks during bath time, and when she told C.P. not to do that C.P. replied: "Well [Tice] stuck a pencil in my butt." Transcript at 303-304. She testified that on another occasion C.P. was playing in the park when he ran to her, and when she asked C.P. why

5

he was not playing C.P. told her it was because "[Tice is] here." Id. at 304. She asked C.P. to show her where Tice was, he pointed the person out, Karen told C.P. that the person was not Tice and that C.P. would "never have to see [Tice] ever again," and C.P. said "[t]hank you, mommy," and hugged her. Id. at 307. She testified that another time C.P. refused to leave the car after arriving at a restaurant, telling Karen that he did not want to go inside "[b]ecause [Tice is] in there" and "[h]e stuck a pencil in my butt." Id. at 308.

On March 28, 2013, the jury found Tice guilty as charged. On May 28, 2013, the court held a sentencing hearing and sentenced Tice to twelve years, including seven years in the Department of Correction and five years suspended to probation. The court also found Tice to be a sex offender and sex or violent predator and ordered him to register as a sex offender for life.

DISCUSSION

I.

The first issue is whether the court abused its discretion or committed fundamental error in admitting evidence of out-of-court statements and videotaped interviews. Generally, we review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. Roche v. State, 690 N.E.2d 1115, 1134 (Ind. 1997), reh'g denied. We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. Joyner v. State, 678 N.E.2d 386, 390 (Ind. 1997), reh'g denied. Even if the trial court's decision was an abuse of discretion, we will not reverse if the

admission constituted harmless error. Fox v. State, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), reh'g denied, trans. denied.

Initially, we observe that Tice raises two sub-issues regarding the admission of the statements and videotaped interviews. First, he challenges the court's finding of reliability of the statements, and second he argues that the evidence constituted a "drumbeat of repetition" of the allegations, violating Ind. Evidence Rule 403. The State observes in its brief that Tice did not object at trial to the admission of the evidence and that any challenge must be brought under the fundamental error exception. See Appellee's Brief at 9-10 (citing Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010), reh'g denied). The State then notes that to the extent Tice challenges the reliability of the statements, he does not allege fundamental error in his brief and accordingly has waived that claim as well.

In the section of Tice's brief challenging the admission of the out-of-court statements and videotaped interviews as unreliable based upon Ind. Code § 35-37-4-6, he asserts that the applicable standard of review is an abuse of discretion standard. Tice cites to Carpenter v. State, 786 N.E.2d 696 (Ind. 2003), and argues that the facts of the instant case are similar to those in Carpenter and that reversal is warranted. We note that the Indiana Supreme Court in Carpenter did not apply the fundamental error doctrine.

In his reply brief Tice concedes that any alleged error in admitting the evidence related to the reliability of the statements was not preserved at trial by objection and that the fundamental error doctrine is applicable. He argues that "while the magical words 'fundamental error' were not used [in his appellant's brief], [he] alleged that he did not

7

receive a fair trial because the admission of these statements affected his substantial rights and are inconsistent with substantial justice." Appellant's Reply Brief at 2. It is true that in Tice's appellant's brief, he stated that "[e]rrors in the admission of evidence will be disregarded unless they affect a party's substantial rights." Appellant's Brief at 8. For the proposition, Tice cites to a statement in Camm v. State, 908 N.E.2d 215, 218 (Ind. 2009), reh'g denied, specifically to Westlaw Headnote 13 of the Indiana Supreme Court's opinion,[1] which states that "'Harmless error' is error that does not affect the substantial rights of a party given the error's likely impact on the jury in light of other evidence presented at trial. Trial Procedure Rule 61." Thus, Tice's reference to "substantial rights" was made in the context of harmless error analysis, rather than the fundamental error doctrine. Tice did not challenge the reliability of the out of court statements pursuant to the fundamental error doctrine in his appellant's brief, and accordingly he has waived this issue on appeal.[2] See Curtis v. State, 948 N.E.2d 1143, 1148 (Ind. 2011) (holding that where the defendant "failed to allege fundamental error in his principal appellate brief, this issue is waived").

To the extent that Tice alleges that the evidence constituted a "drumbeat of repetition" of the allegations, Appellant's Brief at 11, we note that he does allege that such admission constituted fundamental error. Fundamental error is an extremely narrow

---

[1] Tice directs our attention to page 218 of Northeast Reporter Volume 908, which contains Westlaw Headnotes. The text of the opinion begins on page 219.

[2] The State observes in its brief that Tice did object to admitting the videotaped interviews based upon relevance, but he did not raise an objection on the basis that the interviews were not reliable. "It is well-settled law in Indiana that a defendant may not argue one ground for objection at trial and then raise new grounds on appeal." D.G.B. v. State, 833 N.E.2d 519, 525 (Ind. Ct. App. 2005) (quoting Burnett v. State, 815 N.E.2d 201, 207 (Ind. Ct. App. 2004), reh'g denied). Thus, Tice did not preserve the issue on appeal, and he was required to assert in his brief that admitting the interviews constituted fundamental error, which he did not do.

exception that allows a defendant to avoid waiver of an issue.  Cooper v. State, 854 N.E.2d 831, 835 (Ind. 2006).  It is error that makes "a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process . . . present[ing] an undeniable and substantial potential for harm."  Id.  "This exception is available only in 'egregious circumstances.'"  Brown, 929 N.E.2d at 207 (quoting Brown v. State, 799 N.E.2d 1064, 1068 (Ind. 2003)).

Tice argues that the facts of his case are akin to Stone v. State, in which we reversed a conviction for child molesting because the State used multiple witnesses to produce a "drum beat repetition" of the child victim's story.  536 N.E.2d 534, 541 (Ind. Ct. App. 1989), trans. denied.  In Stone, the State had four adult witnesses and the child's sister testify to out-of-court statements made by the child, and at least one of the adults testified before the child took the stand.  Id. at 537.  The child's story was repeated a total of seven times during the trial.  Id.  We found that the child's credibility "became increasingly unimpeachable as each adult added his or her personal eloquence, maturity, emotion, and professionalism to [the child's] out-of-court statements," so that the "presumption of innocence was overcome long before [Stone] got to the stand."  Id. at 540.

Tice points to Karen's testimony that C.P. told her Tice "stuck a pencil in my butt" while changing C.P., that C.P. stuck a toy in his buttocks and when she told him to stop "again said '[Tice] stuck a pencil in my butt,'" that C.P. ran to her while playing at a park believing Tice was at the park, that C.P. once refused to leave the car because he thought Tice was in the restaurant "and 'he stuck a pencil in my butt,[']" and that "Karen testified

9

that C.P. had brought up this same topic on approximately ten occasions." Appellant's Brief at 12. He also points to Sherry's testimony in which she stated that during a conversation with C.P. he told her that "he does not love [Tice] 'because he stuck a pencil in my butt'" and further testified about the restaurant incident. Id. Tice further asserts that Sherry testified "C.P. brought up this topic on ten (10) or more occasions with her." Id. Tice further argues that Karen's husband, the father of C.P., "testified that there were three (3) to four (4) occasions when C.P. brought up the same topic . . . ." Id. at 13. He contends that the videotaped interviews demonstrating "C.P. shutting down at the mention of [Tice's] name or identifying buttocks on the anatomical drawing" was further drumbeat repetition evidence. Id. He notes that C.P. testified at the trial "and when asked if [Tice] did something to him, he replied, '[n]o, he just stuck a pencil in my butt,'" and that these other statements and evidence "were cumulatively used to bolster C.P.'s testimony," were prejudicial, and were a violation Ind. Evidence Rule 403. Id. The State posits that "this is not a drumbeat repetition case because the statements were merely cumulative of C.P.'s testimony, were brief, and did not elaborate on C.P.'s testimony that [Tice] stuck a pencil in his 'butt.'" Appellee's Brief at 19.

The Indiana Supreme Court in Modesitt v. State, 578 N.E.2d 649, 653 (Ind. 1991), sought to curb abuses resulting from admission of a victim's prior statement by a drumbeat repetition of the same statement through other witnesses. The Court adopted Federal Rule of Evidence 801(d)(1) to govern the use of the victim's prior consistent and inconsistent statements at trial and reversed Modesitt's child molesting and criminal deviate conduct convictions because the "drumbeat repetition of the victim's original

10

story" by three witnesses unfairly bolstered the victim's credibility and precluded meaningful cross-examination.[3] Modesitt, 578 N.E.2d at 652-653. The Court's opinion overruled Patterson v. State, 263 Ind. 55, 324 N.E.2d 482 (1975), which allowed "prior out-of-court statements, not under oath," into evidence "as substantive evidence if the declarant was present and available for cross examination at the time of the admission of such statements." Id. at 651. The Court observed that the Patterson rule's rationale "that truthfulness is safeguarded by having the declarant available for cross examination as to the out-of-court statements" had been undercut when the prosecutor put into evidence, over the objection of Modesitt, "the victim's out-of-court charges against Modesitt by three separate and repetitive witnesses prior to calling the victim herself," and therefore "effectively precluded Modesitt from effective cross examination of these charges." Id. at 651 (emphasis omitted). The Court explained:

> The jury first heard and was allowed to consider, as substantive evidence, the victim's statements made to her mother many months prior to trial. At this point, Modesitt had not yet had an opportunity to cross examine the victim herself concerning these charges and, obviously, he could not cross examine the mother concerning the truthfulness of the charges which had been leveled by her daughter. This lack of ability to cross examine the veracity of the statements continued through the repetitive testimony of the welfare caseworker and the psychologist. Prior to putting the victim on the stand, the victim's veracity had been, in essence, vouchsafed by permitting the three witnesses to repeat the accusations of the victim.

Id. The Court, citing to Stone, held that it could not say "the drumbeat repetition of the victim's original story prior to calling the victim to testify did not unduly prejudice the jury . . . ." Id. at 651-652 (citing Stone, 536 N.E.2d at 541).

---

[3] The Court's holding in Modesitt has been codified as Ind. Rule of Evidence 801(d). See Brown v. State, 671 N.E.2d 401, 406 n.4 (Ind. 1996).

11

The Indiana Supreme Court has found that evidence improperly admitted under Ind. Evidence Rule 801(d)(1)(B) to be subject to harmless error analysis. See Bouye v. State, 699 N.E.2d 620, 625-626 (Ind. 1998) (holding that allowing a detective, pursuant to Ind. Evidence Rule 801(d)(1)(B), to read statements of codefendant as they appeared in the probable cause affidavit as evidence of codefendant's prior consistent statements was improper because such statements were made after the codefendant's motive to fabricate arose, but that such error was harmless because it "was merely duplicative of properly admitted evidence" and did not affect the defendant's substantial rights). A panel of this court has previously found the erroneous admission of evidence in violation of Modesitt to be harmless where the victim's prior consistent statements were cumulative and witness testimony concerning the statements was "brief and consistent with" the victim's later testimony. McGrew v. State, 673 N.E.2d 787, 796 (Ind. Ct. App. 1996), reh'g denied, summarily aff'd by 682 N.E.2d 1289, 1292 (Ind. 1997). However, in this particular context, we believe that subjecting the rule in Modesitt to a harmless error analysis directly undermines the purpose of the rule, as well as the purpose of Ind. Evidence Rule 801(d)(1)(B), which is to generally prohibit, unless certain narrow criteria are met, the introduction of prior consistent out-of-court statements of a witness through other witnesses in order to "bolster" a weak witness's testimony. Modesitt, 578 N.E.2d at 653. It would therefore be circular to say that error in admitting prior consistent statements of a witness is harmless if the statements are consistent with the witness's testimony.

Here, however, we need not reach the issue because regardless of whether or not the testimony admitted in this case constituted a "drumbeat repetition," we cannot say such error was fundamental. The record indicates that C.P. testified specifically to the act Tice was accused of performing. Although Karen testified before C.P., C.P.'s testimony came *prior to* the testimony of Sherry and C.P.'s father. Cf. id. at 650 (noting that "[o]nly after the testimony of [] three witnesses was completed was the victim called to testify). Importantly, unlike the defendant in Modesitt, Tice did not object to the presentation of evidence by these witnesses. See Eastwood v. State, 984 N.E.2d 637, 641 (Ind. Ct. App. 2012) (holding that evidence challenged on appeal as "drumbeat repetition" of victim's testimony was not objected to at trial and that the defendant failed to establish fundamental error with regard to the issue), trans. denied. Also, to the extent Tice challenges admitting the interviews into evidence on this basis, we note that the interviews contain almost no verbal communication by C.P. regarding the incident.

We find that the admission of the out-of-court statements and interviews did not deprive Tice of a fair trial, and we conclude that such admission does not constitute fundamental error.

II.

The next issue is whether the prosecutor committed prosecutorial misconduct that resulted in fundamental error. In reviewing a properly preserved claim of prosecutorial misconduct, we determine: (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. Cooper, 854 N.E.2d

13

at 835. Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. Id. The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. Id.

When an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury. Id. If the party is not satisfied with the admonishment, then he should move for mistrial. Id. Failure to request an admonishment or to move for mistrial results in waiver. Id.

Where, as here, a claim of prosecutorial misconduct has not been properly preserved, our standard of review is different from that of a properly preserved claim. Id. More specifically, the defendant must establish not only the grounds for the misconduct, but also the additional grounds for fundamental error. Id.

Tice argues that the prosecutor made certain statements during closing argument which constituted improper vouching. Specifically, he directs our attention to the following statements made by the prosecutor:

> You should not disregard the testimony of any witness without a reason, you don't have any reason to disregard the testimony of any of our witnesses because they told you the truth and their testimony matches up with that instruction.
>
> * * * * *
>
> [W]hat [C.P.] says is that man molested him. It ain't pretty close to the truth, ladies and gentlemen, it is the truth, it is the evidence.
>
> * * * * *
>
> Ladies and gentlemen, I just ask for one thing…one thing, a verdict you can be proud of, a verdict that protects the community, and I ask this one thing

14

because it is all one thing, the truth…the true verdict, he's guilty beyond a reasonable doubt, and I ask that you return the appropriate verdict and hold him accountable . . . .

Transcript at 438, 442, 444; see also Appellant's Brief at 16.

Tice argues that the prosecutor improperly commented on the truthfulness of various witnesses, including C.P., arguing that these statements were "very direct [and] very bold" and "must have had a great deal of impact on the jury and gave the jury the inference that the prosecutor knew something that they did not." Appellant's Brief at 17. In support, Tice cites Ind. Professional Conduct Rule 3.4(e), which states:

> A lawyer shall not . . . in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused . . . .

The State argues that the comments cited by Tice do not constitute misconduct at all, let alone misconduct resulting in fundamental error. The State contends regarding the first comment that "when viewed in context, the prosecutor's word choice did not reflect his own personal views but instead directed the jury to consider the demeanor of the witnesses and content of their testimony," noting that the prosecutor explained immediately following the statement citied by Tice that Karen and Sherry "were credible[] because neither had a motivation to lie or fabricate their testimony due to their professed love of and trust in [Tice]." Appellee's Brief at 25. The State maintains that "the prosecutor illustrated ways the jury could assess the witnesses' credibility and what factors the jury might consider . . . but did not express his personal opinion . . . ." Id. Regarding the second comment cited above by Tice, the State argues that "immediately

15

preceding this remark, the prosecutor encouraged the jury to view the tapes of C.P. and to consider [his] demeanor and countenance, and argued that in doing so the jurors would observe a bright little boy who even [Tice] admitted to police generally told the truth." Id. at 26. The State also notes that immediately prior to making the comment, the prosecutor also discussed Tice's credibility and noted "that he lied when he said he had not seen or been around C.P. for a long time" initially to the police. Id. Regarding the final comment the State argues that it was not improper vouching because "the prosecutor did not vouch for anyone by asking the jury to return a 'true verdict' and find [Tice] guilty as charged." Id. The State further asserts that even if one or more of the comments constituted improper vouching, reversal is not warranted because Tice was not deprived of a fair trial, distinguishing the instant comments from other cases.

To the extent Tice challenges the prosecutor's statements regarding the relative truthfulness of the various witnesses, we observe that the Indiana Supreme Court has held that "a prosecutor may comment on the credibility of the witnesses as long as the assertions are based on reasons which arise from the evidence." Cooper, 854 N.E.2d at 836. In Hobson v. State, 675 N.E.2d 1090, 1095-1096 (Ind. 1996), the Court discussed a claim of fundamental error involving the prosecutor's personal opinions as to the truthfulness of witnesses, noting that the "prosecutor gave personal opinions as to the truthfulness of witnesses" when the prosecutor stated to the jury during closing arguments, "I warned you that [the defendants] are liars." 675 N.E.2d at 1095. The Court held that "[a] prosecutor, in final arguments, can 'state and discuss the evidence and reasonable inferences derivable therefrom so long as there is no implication of

16

personal knowledge that is independent of the evidence.'" Id. at 1096 (quoting Kappos v. State, 577 N.E.2d 974, 977 (Ind. Ct. App. 1991), trans. denied).

Although we do not approve of the prosecutor's statement that "what [C.P.] says is that man molested him. It ain't pretty close to the truth, ladies and gentlemen, it is the truth, it is the evidence," Transcript at 442, we also believe that, when read in context, the prosecutor was making observations regarding witness credibility based on inferences derivable from the evidence. As noted by the State, Tice was the brother of Karen and the son of Sherry, and both testified that they loved and trusted Tice, and on that basis the prosecutor suggested that they had no motivation to fabricate their testimony. The prosecutor emphasized Tice's initial fabrications to detectives, in which he initially indicated that he had not "been around [C.P.] for quite some time" and "that he was out of town" on or about June 11, 2012, but he later admitted that he had watched C.P. on June 11, 2012, for about two or three hours. Transcript at 401. The prosecutor in making his remark that C.P.'s allegation that Tice molested him was "the truth" was immediately preceded by the State encouraging the jury to review the videotaped interviews and infer whether they depicted a child who was not telling the truth. This statement was a directive by the prosecutor to examine the evidence and make reasonable inferences based thereon.

However, in so holding we wish to underscore that "[i]t is improper for the prosecutor to make an argument which takes the form of personally vouching for the witness." Schlomer v. State, 580 N.E.2d 950, 957 (Ind. 1991) (finding error in the prosecutor telling jury that he believed a police officer's testimony). We find that here,

17

although the prosecutor's statement that what C.P. testified "is the truth" approaches the line of impropriety or misconduct, the context of the statement demonstrates that he stopped short of explicitly vouching for C.P. In any event, we cannot say that such statement amounted to fundamental error.

Finally, regarding the challenge to the prosecutor's final remarks to the jury asking them to return a verdict they "can be proud of" and that "protects the community," we agree with the State that such statements do not run afoul of Ind. Professional Rule 3.4(e), and Tice does not cite other authority challenging them. This statement did not imply personal knowledge on the part of the prosecutor. We note that it may be misconduct for a prosecutor to ask a jury to convict a defendant for any reason other than his or her guilt, or to attempt to inflame the passions or prejudices of the jury. Wisehart v. State, 693 N.E.2d 23, 59 (Ind. 1998). Indeed, the Indiana Supreme Court has disapproved of prosecutors invoking a general concern for "community safety" as a legitimate basis for returning a guilty verdict. See Maldonado v. State, 265 Ind. 492, 501, 355 N.E.2d 843, 849 (1976) (finding error in the prosecutor arguing, "this may be the most important thing you'll ever do for your community"). However, Tice brings his challenge under the fundamental error exception, which is extremely narrow and is "available only in 'egregious circumstances'" Brown, 929 N.E.2d at 207, and again we cannot say that he has demonstrated fundamental error in this regard.

### III.

The next issue is whether Tice's sentence is inappropriate in light of the nature of the offense and his character. Ind. Appellate Rule 7(B) provides that we "may revise a

18

sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006). Tice argues that "he should have received a sentence less than the advisory sentence," noting that the facts do not show that this particular crime is any worse than other child molesting cases charged as a class B felony, that "there was a single act against a single victim," that he had no criminal convictions at the time of his sentencing, and that he "is an extremely young man" and "[i]f anyone is capable of rehabilitation it is someone of Tice's age . . . ." Appellant's Brief at 20-22. He also highlights facts including his work history, that he graduated from high school, and that his presentence investigation report ("PSI") "identifies his overall risk assessment score to be 'in the LOW risk category to reoffend.'" Id. at 23.

Our review of the nature of the offense reveals that Tice, while babysitting his two-year-old nephew C.P., inserted a pencil into C.P.'s buttocks and told C.P. that it "smell[ed] good." Transcript at 283. This incident caused C.P.'s buttocks to hurt. Because of the incident, C.P. exhibited fear at various times, including refusing to enter a restaurant and running to Karen while playing in a park, because he believed Tice was in the vicinity. Our review of the character of the offender reveals that Tice did not have any criminal convictions at the time of sentencing.[4] He graduated high school and held various jobs. When questioned by Detective McBride about the incident, Tice initially

_____

[4] We note that Tice's PSI reveals that he was charged on April 6, 2012, with forgery as a class C felony for "present[ing] BMV registration as if signed by Gary Tice" and that the case was pending. Appellant's Appendix at 209.

19

told him that he had not "been around [C.P.] for quite some time" and "that he was out of town" on or about June 11, 2012, before later admitting that he had watched C.P. on June 11, 2012, for about two or three hours. Id. at 401.

After due consideration of the trial court's decision and recognizing the position of trust Tice held over C.P., we cannot say that he has met his burden of showing that his sentence of twelve years, including seven years in the Department of Correction and five years suspended to probation is inappropriate in light of the nature of the offense and the character of the offender.

CONCLUSION

For the foregoing reasons, we affirm Tice's conviction and sentence for child molesting as a class B felony.

Affirmed.

BARNES, J., and ROBB, J., concur.