## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

FILED

Oct 11 2019, 10:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Christopher Sturgeon
Clark County Public Defender's Office
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

### IN THE
# COURT OF APPEALS OF INDIANA

D.H.,

*Appellant-Plaintiff,*

v.

State of Indiana,

*Appellee-Respondent.*

October 11, 2019

Court of Appeals Case No.
18A-JV-2111

Appeal from the Clark Circuit Court

The Honorable Vicki L. Carmichael, Judge

Trial Court Cause No.
10C04-1712-JD-314

**Najam, Judge.**

## Statement of the Case

D.H. appeals the juvenile court's adjudication of him as a delinquent on one count of child molesting, as a Level 4 when committed by an adult. D.H. presents a single issue for our review, namely, whether the trial court violated his right to confrontation under the federal and state constitutions. We affirm.

## Facts and Procedural History

On November 4, 2017, thirteen-year-old D.H. was at his seven-year-old cousin A.G.'s house in Memphis, Indiana and the two of them were in a hot tub together. D.H. asked A.G. to come over to where he was sitting in the hot tub and, after he "got his [penis] out of his trunks," D.H. "started bouncing" A.G. on his lap, and he put his penis "in [between her] legs." State's Ex. 11 at 40. After a short time, A.G.'s father, J.G., approached the hot tub and saw D.H. bouncing A.G. up and down on his lap. J.G. found this suspicious and pulled A.G. out of the hot tub. When A.G. was out of the water, J.G. observed that A.G.'s bathing suit bottom was pulled to the side, exposing her genitals.

J.G. confronted D.H. about what was going on. D.H. proceeded to move his hands around underwater near his lap and, when D.H. stood up, J.G. observed that D.H.'s underwear was askew and his penis was erect. J.G. became enraged and shoved D.H. to the ground. D.H. then ran off, called his mother, and told her that J.G. had battered him. D.H.'s mother called law enforcement, and Officer Mark Grube with the Clark County Sheriff's Office

arrived at J.G.'s residence. Officer Grube questioned J.G.; A.G.'s mother, J.H.; D.H.; and other family members.

[4] Detective James Haehl soon arrived at the scene and advised A.G.'s parents to take A.G. to a local hospital for an examination. They complied, and a nurse, Misty Carroll, who examined A.G. found "nothing that would confirm or deny that any sexual activity had taken place." Appellant's App. Vol. 3 at 71. In addition, Detective Haehl took a brief video-recorded statement of A.G. at the hospital. During that interview, A.G. did not say much, but she told Detective Haehl that D.H. had put "it" in between her legs and told her not to tell anyone or else he would get in trouble. State's Ex. 9.

[5] On November 21, A.G. underwent an extensive video-recorded interview with Rebecca Sanders at the Child Advocacy Center. A.G. told Sanders that D.H. exposed his "private" from inside his trunks and bounced her up and down on his lap. State's Ex. 2. A.G. also explained that her swim bottoms had fallen down to her thighs or knees and that D.H.'s penis had touched her in between her legs.

[6] On December 22, the State filed a petition alleging that D.H. was a delinquent for committing child molest, as a Level 4 felony when committed by an adult. On April 4, 2018, the juvenile court held a protected person hearing and determined that A.G. would not have to testify at the factfinding hearing. In addition, the juvenile court ordered that D.H. could not be present for his counsel's ensuing video-recorded deposition of A.G. The factfinding hearing

occurred over the course of three days in May and June. Over D.H.'s objections, the court admitted into evidence the two video-recorded interviews with A.G. The trial court also admitted, without objection, A.G.'s video-recorded deposition with A.G.'s counsel. At the conclusion of the hearing, the juvenile court adjudicated D.H. a delinquent. Following a dispositional hearing, the juvenile court placed D.H. on a suspended commitment to the Department of Correction. This appeal ensued.

## Discussion and Decision

[7] D.H. contends that the juvenile court erred when it admitted into evidence A.G.'s out-of-court statements to Carroll, Detective Haehl, and Sanders. In particular, D.H. asserts that he was denied any opportunity to cross-examine A.G. during those prior statements and, therefore, the admission of those statements violated his right to confront A.G. under both the federal and state constitutions. D.H.'s arguments raise questions of law we review *de novo*. *Redfield v. State*, 78 N.E.3d 1104, 1106 (Ind. Ct. App. 2017), *trans. denied*.

[8] Initially, we note that D.H.'s primary argument on appeal is that the juvenile court violated Indiana Code Section 35-37-4-6, the "Protected Person Statute," when it admitted the challenged evidence at the factfinding hearing. However, D.H. did not object to any of the challenged evidence on the basis of a violation of that statute. It is well-settled that a defendant may not argue one ground for objection at trial and then raise new grounds on appeal. *D.G.B. v. State*, 833 N.E.2d 519, 525 (Ind. Ct. App. 2005) (holding defendant waived argument under Protected Person statute for failing to object on that ground at factfinding

hearing).  Accordingly, D.H.'s argument under the Protected Person Statute is waived.  *See id.*

[9]    D.H. also asserts that the trial court violated his right to confrontation under the Sixth Amendment and Article 1, Section 13 of the Indiana Constitution when it admitted A.G.'s out-of-court statements.  The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  In *Crawford v. Washington*, the United States Supreme Court held that this clause prohibits "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."  541 U.S. 36, 53-54 (2004).  "Though leaving 'testimonial statement' undefined, the Court stated that the label 'applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.'"  *Cardosi v. State*, 128 N.E.3d 1277, 1286 (Ind. 2019) (quoting *Crawford*, 541 U.S. at 68).  Article 1, Section 13 of the Indiana Constitution similarly provides that, "[i]n all criminal prosecutions, the accused shall have the right to . . . meet the witnesses face to face."

[10]    We agree with D.H. that A.G.'s statements to Carroll, Detective Haehl, and Sanders were testimonial statements.  And at no point was D.H. permitted to cross-examine A.G. regarding those statements, either at the protected person hearing or at the factfinding hearing.  But our analysis does not end there.

First, D.H. did not object at all to the admission into evidence of A.G.'s statements to Carroll. Thus, he has not preserved any errors with respect to that evidence for appellate review. And he does not argue fundamental error. The issue is waived.

Second, a denial of the right of confrontation may be harmless error. As our Supreme Court has explained:

> A "primary interest" secured by the Confrontation Clause is the right of cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L.Ed.2d 347 (1974). A criminal defendant's Sixth Amendment right to confront witnesses is nevertheless subject to reasonable limitations placed at the discretion of the trial court. *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L.Ed.2d 674 (1986). Violations of the right of cross-examination do not require reversal if the State can show beyond a reasonable doubt that the error did not contribute to the verdict. *See Arsdall*, 475 U.S. at 684, 106 S. Ct. 1431; *see also Smith v. State*, 721 N.E.2d 213, 219 (Ind. 1999) ("[V]iolations of the right to cross-examine are subject to harmless-error analysis.").

> In *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court rejected the argument that all federal constitutional errors, regardless of their nature or the circumstances of the case, require reversal of a judgment of conviction. The Court reasoned that in the context of a particular case, certain constitutional errors, no less than other errors, may have been "harmless" in terms of their effect on the fact-finding process at trial. As the Supreme Court has stressed, and we too have expressed, the Constitution entitles a criminal defendant to a fair trial, not a perfect one. *E.g., United States v. Hasting*, 461 U.S. 499, 508-09, 103 S. Ct. 1974, 76 L.Ed.2d 96 (1983); *Bruton v. United States*, 391 U.S. 123, 135, 88 S. Ct. 1620,

20 L.Ed.2d 476 (1968); *Riley v. State*, 489 N.E.2d 58, 61 (Ind. 1986).

The Supreme Court has explained that a *Chapman* harmless error analysis turns on a number of factors available to the reviewing court:

> These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted and, of course, the overall strength of the prosecution's case.

*Arsdall*, 475 U.S. at 684, 106 S. Ct. 1431.

> Since *Chapman*, we have reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt. *See Debro v. State*, 821 N.E.2d 367 (Ind. 2005); *Reed v. State*, 748 N.E.2d 381, 391 (Ind. 2001).

*Koenig v. State*, 933 N.E.2d 1271, 1273-74 (Ind. 2010). Likewise, in regards to violations of State constitutional rights, the Indiana Supreme Court has held that "trial court error, even of constitutional dimension, does not necessarily require reversal of a conviction. Rather, if the error is such that it would not affect the outcome of the trial, we deem it harmless." *Bush v. State*, 775 N.E.2d 309, 311 (Ind. 2002).

[13] Here, A.G.'s out-of-court statements to Detective Haehl and Sanders were merely cumulative of the testimony A.G. gave in her video-recorded deposition,

which was admitted without objection at the factfinding hearing.[1]  Moreover, A.G.'s father testified at the factfinding hearing that he had witnessed D.H.'s molestation of A.G. in the hot tub, including having found A.G.'s genitals exposed and having observed D.H. with an erect penis.  Finally, while D.H. was not present at A.G.'s deposition, his attorney was able to thoroughly cross-examine her.  We can say with confidence that the error, if any, in the admission of the challenged evidence in this case was harmless.  *See id.*

[14]  Affirmed.

Bailey, J., and May, J., concur.

---

[1]  D.H. did not object to the admission into evidence of A.G.'s video-recorded deposition at the factfinding hearing.  Accordingly, he has not preserved for our review his contention that the admission of that evidence violated his right to confront witnesses under the Indiana Constitution.  And we reject D.H.'s attempt to argue fundamental error on this issue for the first time in his reply brief.  Our Supreme Court has held that where, as here, a party does not allege fundamental error in his principal appellate brief but, instead, raises it for the first time in his reply brief, consideration of that claim is waived.  *See Bowman v. State*, 51 N.E.3d 1174, 1179-80 (Ind. 2016).