

FILED
Nov 30 2015, 6:11 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Rodney T. Sarkovics
Campbell Kyle Proffitt LLP
Carmel, Indiana

ATTORNEYS FOR APPELLEE

David W. Stewart
Michael J. Sobieray
Stewart & Stewart
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anna Wood, | November 30, 2015 |
| *Appellant-Respondent,* | Court of Appeals Case No. 29A02-1507-PO-856 |
| v. | Appeal from the Hamilton Superior Court |
| D.W., Minor Child, by next friend, Rhonda Wood, | The Honorable Gail Z. Bardach, Judge |
| *Appellee-Petitioner* | Trial Court Cause No. 29D06-1504-PO-3251 |

**Crone, Judge.**

## Case Summary

[1]     Anna Wood appeals the trial court's grant of a protective order in favor of Rhonda Wood on behalf of her son, D.W.  Anna contends that the trial court committed reversible error in admitting certain hearsay and opinion evidence.

We agree and therefore reverse and remand with instructions to vacate the protective order against her.

## Facts and Procedural History

[2] Rhonda has two children: D.W., who was seven years old in June 2015, and A.W., who was five. Rhonda is divorced from the children's father, Shaun Wood.[1] Rhonda and the children reside in Hamilton County, as does Shaun. Anna is Shaun's half-sister and lives in Chicago.

[3] On April 13, 2015, Anna filed a petition for a protective order against Rhonda in Hamilton County because Rhonda was "threatening to contact Animal Control" about Anna's dog, which had allegedly bitten A.W. Tr. at 72.[2] On April 27, Rhonda filed a petition on behalf of each child for a protective order against Anna, alleging that Anna had committed sex offenses against both children in Shaun's home on or about April 21. The petition on behalf of D.W. reads in relevant part as follows:

> Just recently [D.W.] and [A.W.] told Detective [Sarah] Harris [of the Carmel Police Department] and Emily, a case manager [from the Department of Child Services ("DCS")], about very specific events alleging sexual abuse by Anna. These times included Easter weekend [April 4 and 5] and during the kids [sic] spring break. The kids alleged this occurred at their dad's home. I

---

[1] Shaun's first name is spelled "Shawn" in the transcript, but both parties refer to him as "Shaun."

[2] The alleged dog bite was a basis for Rhonda's petition for a protective order as to A.W. At the conclusion of the hearing on the petition, the trial court remarked, "[T]he only evidence there was about whether or not a dog bit [A.W.] […] was that it didn't happen." Tr. at 81.

signed a safety plan [drafted by a DCS case manager], which is attached. Detective Harris and the family case manager have advised Anna Wood is not to be around the kids. I am unable to get confirmation from their dad that this is being followed. In fact, she was with the kids last week after the allegations were made. Detective Harris and the family case manager told me they believed the kids. [A.W.] told them of Anna touching her vagina and that [A.W.] had seen Anna pull on [D.W.'s] penis. [A.W.] has also stated that Anna has told her to leave the room and when she looked Anna was pulling [D.W.'s] penis. [A.W.] stated this occurred at her Dad's current home. I was informed by Detective Harris and family case manager, [D.W.] informed them of specific sexual abuse acts that were as recent as April, 2015. These all involved Anna grabbing or "squishing" his penis. I was informed none of these described acts happening [sic] during a time, such as bath time, as to when the kids could have misconstrue [sic] what occurred. [D.W.] has told his Grandmother that Anna is still pulling on and squishing his penis as well. The kids have told me she has been doing it as well.

Appellant's App. at 11. On April 28, the trial court granted ex parte protective orders as to both children.

[4]     Anna requested a hearing on the petitions, which was held on June 19. The children's nanny, Michelle Anderson, testified that when she picked up D.W. from school at 2:30 p.m. on April 30, he was "crying" and "very upset." Tr. at 41. She asked him what was wrong. Over Anna's objection, Anderson testified that D.W. stated, "Aunt Christy touched my peenie[.]" *Id.*

[5]     Also over Anna's objection, Detective Harris testified to the effect that she believed that the children's sexual abuse allegations against Anna were truthful. The detective acknowledged, however, that the children had given

"inconsistent" statements regarding the alleged abuse and that DCS had "unsubstantiated" those allegations. *Id*. at 35, 33. Detective Harris had recommended that child molesting charges be filed against Anna, but as of the hearing date no charges had been brought.

[6] Anna denied touching D.W.'s penis and denied touching A.W. "in any sexual way[.]" *Id*. at 62. Neither D.W. nor A.W. testified at the hearing.

[7] At the conclusion of the hearing, the trial court found that "[t]here was no testimony by anyone of what may have happened to [A.W.]" and dismissed the protective order as to her. *Id*. at 80. The court found "by a preponderance of the evidence that there was an act of sexual abuse or a sex offense" committed against D.W. and therefore continued the protective order as to D.W. *Id*. at 81-82.[3] The court extended that order to protect A.W. and required Anna to stay away from Shaun's home regardless of whether D.W. is present. Appellant's App. at 26 (protective order), 31 (order on Anna's motion to clarify). Anna now appeals.

## Discussion and Decision

[8] A parent may file a petition for a protective order on behalf of a child against a person who has committed domestic violence (which includes a sex offense) against the child. Ind. Code §§ 34-26-5-2(b), 34-6-2-34.5. Upon a showing of

---

[3] Rhonda's petition as to D.W. contained allegations regarding three other incidents. The trial court found no evidence of any danger as to the first, and Rhonda presented no evidence regarding the other two.

domestic violence by a preponderance of the evidence, "the court shall grant relief necessary to bring about a cessation of the violence or the threat of violence." Ind. Code § 34-26-5-9(f).

[9] Anna argues that the trial court erred in granting Rhonda's petition for a protective order as to D.W. because no competent evidence was introduced that she committed a sex offense against D.W. Her argument focuses on two pieces of evidence: (1) D.W.'s statement to Anderson that Anna had touched his "peenie"; and (2) Detective Harris's opinion to the effect that the children's sexual abuse allegations against Anna were true.[4] "Our standard of review of a trial court's admission or exclusion of evidence is an abuse of discretion." *In re Des. B.*, 2 N.E.3d 828, 834 (Ind. Ct. App. 2014).

> A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court. It is well-established that errors in the admission of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party. To determine whether the admission of evidence affected a party's substantial rights, we assess the probable impact of the evidence upon the finder of fact.

*Id*. (citations and quotation marks omitted).

---

[4] Anna also challenges the admissibility of a cellphone voicemail message from D.W. to Rhonda on April 30 that states in pertinent part, "And because they touch Christy's peenie I'm lying and I'm not lying." Tr. at 53. There is no indication that the trial court relied on this unintelligible statement in finding that Anna committed a sex offense against D.W., so we do not address it.

# Section 1 – The trial court abused its discretion in admitting D.W.'s statement as an excited utterance.

[10] D.W.'s statement to Anderson that Anna touched his "peenie" was hearsay. *See* Ind. Evidence Rule 801(c) (defining hearsay as "a statement that: (1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted."). Hearsay is not admissible unless the evidence rules "or other law provides otherwise." Ind. Evidence Rule 802. Over Anna's hearsay objection, the trial court admitted D.W.'s statement as an excited utterance, which is not excluded "by the rule against hearsay, regardless of whether the declarant is available as a witness[.]" Ind. Evidence Rule 803. An excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Ind. Evidence Rule 803(2).

[11] Our supreme court has stated,

> The underlying rationale of the excited utterance exception is that such a declaration from one who has recently suffered an overpowering experience is likely to be truthful. While the event and the utterance need not be absolutely contemporaneous, lapse of time is a factor to consider in determining admissibility. Similarly, that the statements were made in response to inquiries is also a factor to be considered. Whether given in response to a question or not, the statement must be unrehearsed and made while still under the stress of excitement from the startling event.

*Hardiman v. State*, 726 N.E.2d 1201, 1204 (Ind. 2000) (citations omitted); *see also* *Jenkins v. State*, 725 N.E.2d 66, 68 (Ind. 2000) ("Although the amount of time

that passes between the startling event and the statement is not necessarily dispositive, it is one factor to consider when determining the admissibility of statements. A long period of time reduces the likelihood that a statement is made without deliberate thought and under the stress of excitement of an event.") (citation omitted).

[12] "Determining whether a statement constitutes an excited utterance is essentially a factual determination subject to a clearly erroneous standard of review, sometimes described as the functionally equivalent abuse of discretion." *Davenport v. State*, 749 N.E.2d 1144, 1148 (Ind. 2001). "For a hearsay statement to be admitted as an excited utterance, three elements must be shown: (1) a startling event, (2) a statement made by a declarant while under the stress of excitement caused by the event, and (3) that the statement relates to the event." *Id*. "This is not a mechanical test. It turns on whether the statement was inherently reliable because the witness was under the stress of an event and unlikely to make deliberate falsifications." *Id*.; *see also Fowler v. State*, 829 N.E.2d 459, 463 (Ind. 2005) ("The ultimate issue is whether the statement is deemed reliable because of its spontaneity and lack of thoughtful reflection and deliberation."), *cert. denied* (2006).

[13] Anna points out that Rhonda failed to establish how much time elapsed between the alleged molestation and D.W.'s statement, which was made on April 30. Rhonda alleged in her protective order petition that the molestation occurred on or about April 21, but it is axiomatic that "pleadings are not evidence[.]" *Ewing v. Timmons*, 135 Ind. App. 274, 278, 193 N.E.2d 497, 499

(1963).[5] Although lapse of time is not a dispositive factor, admitting a hearsay statement relating to a startling event with no foundational evidence regarding when the event occurred would undermine the rationale for the excited utterance exception to the hearsay rule.[6] The mere fact that D.W. exhibited stress when he made the statement is not sufficient. Absent any indication of how much time elapsed between the alleged molestation and D.W.'s statement, we conclude that the trial court abused its discretion in admitting the statement as an excited utterance.[7] *Cf. D.G.B. v. State*, 833 N.E.2d 519, 527 (Ind. Ct. App. 2005) (holding that trial court abused its discretion in admitting molestation victim's statements as excited utterances, where victim "had spent the day resting, had been released from the hospital, and an entire day had passed since the event took place.").[8]

---

[5] Anna testified that she last saw D.W. on April 12, more than two weeks before he made his statement to Anderson. Rhonda presented no contrary evidence.

[6] Here, the trial court was reduced to "hypothesiz[ing]" about what prompted D.W. to make his statement to Anderson on April 30. Tr. at 78. This undermines the rationale for admitting the statement.

[7] "[W]e may affirm a trial court's decision regarding the admission of evidence if it is sustainable on any basis in the record." *Johnson v. State*, 6 N.E.3d 491, 499 (Ind. Ct. App. 2014). Rhonda posits no other basis for the admissibility of D.W.'s statement, and we are unaware of any in this particular context. *Cf.* Ind. Code § 35-37-4-6 (regarding admissibility of statements of "protected persons" in criminal actions).

[8] We are unpersuaded by Rhonda's reliance on *Holmes v. State*, 480 N.E.2d 916 (Ind. 1985), and *Jones v. State*, 800 N.E.2d 624 (Ind. Ct. App. 2003), in which the precise time of the startling events was unknown but was unquestionably within a matter of minutes and not more than three hours, respectively, of when the statements at issue were made.

## Section 2 – The trial court abused its discretion in admitting Detective Harris's opinion regarding the truthfulness of the children's allegations.

Indiana Evidence Rule 704(b) states in pertinent part that witnesses may not testify to opinions concerning "the truth or falsity of allegations[.]" Over Anna's objection, the trial court admitted Detective Harris's opinion to the effect that the children's sexual abuse allegations against Anna were true. This was an abuse of discretion.[9]

## Conclusion

D.W.'s statement and Detective Harris's opinion were the only probative evidence that Anna committed a sexual offense/domestic violence against D.W.[10] Consequently, the trial court's erroneous admission of this evidence

---

[9] When Anna objected to Detective Harris's opinion based on Evidence Rule 704(b), the trial court replied, "I can accept it as an expert opinion." Tr. at 31. Evidence Rule 702(a) states,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

Rule 702(a) does not permit an expert witness to give an opinion as to the truth or falsity of allegations, and Rule 704(b) in fact prohibits it. *Ritchie v. State*, 875 N.E.2d 706, 728 (Ind. 2007).

[10] Rhonda mentions a "safety plan" that was initiated by DCS on April 21. Petitioner's Ex. B. The plan mentions only "allegations" without describing them, *id*., and Detective Harris acknowledged that DCS had "unsubstantiated" them. Tr. at 33. Rhonda also mentions hearsay statements that Anna successfully objected to. And finally, Rhonda mentions Detective Harris's recommendation that child molesting charges be filed against Anna. The detective offered no details regarding the basis for that recommendation other than her opinion that D.W.'s sexual abuse allegations were true, and we have held her opinion inadmissible.

affected Anna's substantial rights and cannot be considered harmless.[11]

Therefore, we reverse and remand with instructions to vacate the protective order against Anna.[12]

[16] Reversed and remanded.

May, J., and Bradford, J., concur.

---

[11] Indiana Code Section 34-26-5-9(f) states, "A finding that domestic or family violence has occurred sufficient to justify the issuance of an order under this section means that a respondent represents a credible threat to the safety of a petitioner or a member of a petitioner's household." Rhonda asserts,

> The protective order was properly issued against Anna because it was established by a preponderance of the evidence that Anna represents a credible threat to the safety of [D.W.], or has placed [D.W.] in fear of physical harm. When a sex offense is involved, it need not actually be committed by a family member.

Appellee's Br. at 10. The only stated basis for Rhonda's protective order petition as to D.W. was that Anna had committed a sex offense against him. Appellant's App. at 10. Because Rhonda failed to present any admissible evidence that a sex offense occurred, she also failed to establish that Anna represents a credible threat to D.W.'s safety.

[12] Given our resolution of this appeal, we need not address Anna's arguments that the trial court erred in extending D.W.'s protective order to A.W. and requiring her to stay away from Shaun's home regardless of whether D.W. is present.