



FILED

Feb 10 2026, 9:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Denitra Jones,

*Appellant-Defendant*

v.

Full Spectrum Property Management,

*Appellee-Plaintiff*

February 10, 2026

Court of Appeals Case No.
25A-EV-532

Appeal from the Madison Circuit Court

The Honorable Kevin M. Eads, Magistrate

Trial Court Cause No.
48C05-2411-EV-1200

**Opinion by Judge Kenworthy**
Chief Judge Tavitas and Judge Bailey concur.

**Kenworthy, Judge.**

## Case Summary

[1] Denitra Jones appeals the trial court's orders granting Full Spectrum Property Management ("Landlord") possession of property Landlord leased to Jones and awarding Landlord damages, court costs, and attorney fees. Jones presents the following restated issues:

1. Did the trial court improperly shift the burden of proof to Jones on Landlord's claim for possession?

2. Did the trial court's hearing procedures deny Jones due process of law?

3. Did the trial court err by prospectively declaring Jones' personal property abandoned and disposable?

4. Did the trial court err in handling Jones' counterclaim?

[2] We agree with Jones that this case is "marked by a series of procedural failures" and the trial court's conduct of the possession hearing denied Jones due process of law, resulting in an unlawful eviction. *Appellant's Br.* at 9. The trial court also erred in its handling of Jones' personal property and her counterclaim. We therefore reverse the order of possession (including disposition of personal property) and subsequent award of damages, attorney fees, and costs to Landlord, and remand with orders to hear Jones' counterclaim.

## Facts and Procedural History

[3] On November 14, 2024, Landlord filed a claim of possession against Jones and her son, Ar'monte King, for the home they rented from Landlord at 1618 Central Avenue in Anderson ("the property"). In the claim, Landlord alleged Jones and King were in breach of contract for failing to timely pay rent and sought back rent, court costs, and attorney fees. The complaint stated the monthly rent for the property was $650 and Landlord "delivered notice to vacate: October 18, 2024." *Appellant's App. Vol. 2* at 7. With the claim, Landlord filed an affidavit of debt signed by its full-time employee, Julie Perkins, stating the account was opened on December 2, 2022; the last payment was made on October 23, 2024, for $100; and the tenants were in arrears $1,475. Landlord also filed a copy of a residential lease agreement for the property for the term December 2, 2022, through November 30, 2023, signed by Jones, King, and Landlord's representative. Jones received service of the claim on November 22.

[4] The trial court held a possession hearing on December 9, 2024. Landlord appeared by counsel, and Jones appeared *pro se*. King did not appear, as he had passed away in April 2024. Landlord's attorney did not speak at the hearing and introduced no testimony or documentary evidence on Landlord's behalf.

[5] After swearing in Jones, the trial court began the hearing by asking Jones if she received information about rental assistance and landlord-tenant mediation programs. She said she had sought assistance through St. Vincent DePaul (a charitable organization), had receipts, and she was "still paying the rent." *Tr.*

*Vol. 2* at 5.  She also mentioned there was a gas leak in the house, service had been disrupted, and she had proof to offer.  In response, the trial court questioned Jones about her occupancy:

> THE COURT: Are you still living in the property, ma'am?
>
> JONES: I'm in the house, yes, but all my stuff is getting moved out.
>
> THE COURT: Okay, so you're in the process of moving out, right now?
>
> JONES: Well, they said they were taking me to Court and um.
>
> THE COURT: But, are you moving out, did you make the decision to move out?
>
> JONES: They told me I had to get out.
>
> THE COURT: [A]re you moving out?
>
> JONES: Yes.
>
> THE COURT: Okay, when were you planning on being out?
>
> JONES: Um, I can, um probably as soon as possible, but I, that's what I'm saying.  I went to Saint Vincents and that's how I found out I was coming to Court, if I had known that I'd gone up to Saint Vincents.

THE COURT: Okay, [Landlord is] saying that you're behind on the rent. Do you agree that you're behind?

JONES: I know that I might be a little bit behind, but [Landlord is] charging me a month in advance to make it look like I'm behind in my rent, I'm not that far behind.

THE COURT: Okay, take that one month out of consideration for the moment. Are you still behind, even if you do that?

JONES: Maybe, uh like three (3), two hundre[d] (200) dollars[.]

THE COURT: Okay, alright, when is it, you think you'll be done moving out?

JONES: I'll be out by this weekend.

THE COURT: By this weekend?

JONES: Yeah.

THE COURT: So if I make [p]ossession for next Monday, that would be the [sixteenth] (16th) that would work for ya?

JONES: Will, I have to come back to Court?

THE COURT: No, no, well not then, there's a damages hearing that would be held, that will be in February, but does having you out by Monday work then?

JONES: Well . . . I have to . . . at least have thirty (30) days . . . I got a wheelchair and stuff [c]oming to my house[.]

*Id.* at 5–7. Jones explained that in addition to the wheelchair delivery, her monthly case management services would be disrupted if she vacated in a week. The trial court suggested she file a change of address form and postpone delivery of the wheelchair until she found another place to live. Jones responded she wanted to countersue. The trial court directed her to the information desk to get the form.

[6] The trial court then ordered Jones to vacate the property by 5:00 p.m. on December 16—with an eviction order to issue to the sheriff if she failed to vacate that day—and declared any personal property Jones left on December 16 abandoned and disposable. The trial court set a damages hearing for February 4, 2025.

[7] The same day as the possession hearing, Jones filed with the clerk a hand-written document alleging there was no gas service at the house due to a leak; a water leak caused an inflated water bill; she was making rental payments; she was actively seeking rental assistance with Landlord's knowledge; she did not owe $1,475 in back rent; and Landlord was charging rent in advance to inflate the arrears. The document was captioned "cou[n]ter claim" with the parties' names and the eviction cause number written at the top. *Appellant's App. Vol. 2* at 12. In the document, Jones requested damages. The clerk docketed the filing as "Counterclaim Filed," noting: "Matter to be addressed at 02/04/2025 hearing." *Id.* at 3.

[8] The trial court held the damages hearing in February as planned. Landlord appeared by counsel and by its employee, Perkins. Jones again appeared *pro se*. Perkins testified Jones owed $1,475 in back rent at the time the case was filed in November 2024, owed $650 for December rent, and paid a $650 security deposit. Landlord requested damages of $1,475 (representing the rent owed less the security deposit[1]) plus $1,000 in attorney fees, court costs, and interest. Landlord introduced no evidence of attorney fees charged.

[9] When Jones attempted to cross-examine Perkins about whether Perkins knew she had been seeking rental assistance, the trial court explained it "wouldn't be getting into . . . any help you had available" because "possession is . . . something we've already decided" and "this [hearing] is about the back rent they're requesting." *Tr. Vol. 2* at 17. Jones also attempted to raise allegations about maintenance and repair issues, gas and water leaks, and lack of eviction notice. The trial court reiterated, "we've already discussed and decided possession" and "we're just talking now about whether there is money owed[.]" *Id.* at 18–19.

---

[1] Perkins explained Jones owed rent of $650 for December 2024—despite being evicted on December 16—but Landlord was "giving credit" for the $650 security deposit, essentially canceling each other out. *Tr. Vol. 2* at 15. But when Jones later offered a transaction sheet into evidence, the ledger did not show a rental charge for December, Perkins testified Landlord was *not* charging for any portion of December, and the trial court confirmed "there isn't anything in here where they are making a claim for December, anyway." *Id.* at 27. Then, on rebuttal, Landlord's attorney asked Perkins to clarify "you *are* charging for December" and "the security deposit . . . covers that," and Perkins replied, "Yes." *Id.* at 31 (emphasis added). The trial court's written damages order states Jones' security deposit was credited to her before entry of judgment. Today, we reverse the order of possession and the resulting award of damages, but in doing so, note it is unclear from Landlord's contradictory testimony whether Jones received credit for her security deposit.

The hearing continued for some time, during which Jones offered a copy of a transaction sheet prepared by Landlord showing the 2024 rental charges and her payments, and the trial court walked Jones through the sheet. On its own motion, the trial court admitted the lease from December 2022 as Plaintiff's Exhibit 1, which Landlord had submitted with its claim. The trial court asked Jones about the water and gas leaks, and Landlord's attorney elicited rebuttal testimony from Perkins about repairs Landlord had made.

After the trial court confirmed the amount of damages Landlord was requesting, Jones asked, "And what about my countersuit?" *Id.* at 35. The trial court responded, "You have a countersuit?" *Id.* Landlord objected to hearing it on the basis Jones never served Landlord with a copy. Jones informed the court, "I filed that upstairs, and they said they would give it to the right people[.]" *Id.* at 36. The trial court told Jones, "Really what you did was you really wrote a letter addressed to the court." *Id.* at 37. The trial court seemed to read through the document while on the bench, determined much of Jones' testimony at the hearing reflected the letter's contents, and found such testimony did not impact its decision. The trial court entered judgment in Landlord's favor of $2,475 plus court costs and 8% annual interest and concluded the damages hearing by informing Jones she could appeal. Neither the written damages order nor the Chronological Case Summary ("CCS") addresses the disposition of Jones' counterclaim.

## Standard of Review

Judgments in small claims actions are "subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). We will not set aside the factual findings or judgment entered in a bench trial unless clearly erroneous. Ind. Trial Rule 52(A); *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1067 (Ind. 2006). In determining whether a judgment is clearly erroneous, we do not reweigh the evidence or determine witness credibility. *City of Dunkirk Water & Sewage Dep't v. Hall*, 657 N.E.2d 115, 116 (Ind. 1995). We consider only the evidence supporting the judgment and the reasonable inferences drawn from that evidence. *Id*. This "deferential standard of review is particularly important in small claims actions, where trials are 'informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law.'" *Id*. (quoting S.C.R. 8(A)). We review questions of law *de novo*, just as we do in appeals from a court of general jurisdiction. *Trinity Homes,* 848 N.E.2d at 1068.

We also note Landlord has not filed an appellate brief. When an appellee has not filed a brief, "we need not undertake the burden of developing an argument on the appellee's behalf." *Id*. "[W]e will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error." *Id. Prima facie* error is error "at first sight, on first appearance, or on the face of it." *Id.* (citation omitted). If an appellant is unable to meet this burden, we will affirm.

## The trial court improperly shifted the burden of proof for Landlord's breach of contract and possession claims to Jones.

[14] Jones first claims the trial court improperly shifted the burden of proof to Jones and Landlord failed to prove its eviction claim by a preponderance of the evidence. "Ejectment is an action to restore possession of property to the person entitled to it." *Morton v. Ivacic*, 898 N.E.2d 1196, 1199 (Ind. 2008). Landlord claimed it was entitled to possession of the rental property because Jones was in breach of contract for failing to timely pay rent. To recover for a breach of contract, a plaintiff must prove: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach. *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007).

[15] Trials in small claims actions may be informal, but "the parties in a small claims court bear the same burdens of proof as they would in a regular civil action on the same issues." *LTL Truck Serv., LLC v. Safeguard, Inc.*, 817 N.E.2d 664, 668 (Ind. Ct. App. 2004). Although the method of proof may be informal, relaxed evidentiary rules are "not the equivalent of relaxation of the burden of proof." *Id.* "Each party to a small claims action still has the burden of proof for a claim or counterclaim and is responsible for bringing evidence to court that is sufficient to sustain that burden." *Muldowney v. Lincoln Park, LLC*, 83 N.E.3d 130, 132 (Ind. Ct. App. 2017).

[16] Landlord's claim for possession asserted rent was $650 per month and Jones owed $1,475 in rent at the time of filing. A complaint, however, is not

evidence. *See Wood v. D.W. ex rel. Wood*, 47 N.E.3d 12, 16 (Ind. Ct. App. 2015) (noting "it is axiomatic that pleadings are not evidence") (internal quotation and citation omitted). Along with the claim, Landlord filed a residential lease agreement signed by Jones and King. That lease was not offered or admitted into evidence at the possession hearing. In any case, that lease terminated on November 30, 2023, and has no renewal provisions. No person testified at the possession hearing concerning the material lease terms, such as the duration, monthly rental obligation, or when rent was due.[2]

[17] The only sworn statement submitted by Landlord was its employee Perkins' affidavit of debt dated November 14 and filed with the complaint. In that document, Perkins averred Jones had an unpaid balance of $1,475 on an account associated with the property; the account was opened December 2, 2022; and the last payment was made on October 23, 2024, for $100. The affidavit provides no material lease terms.

[18] At the possession hearing, Jones disputed the amount of back rent owed, and Landlord presented no additional evidence to support the arrears calculation. In response to the trial court's questions, Jones testified she "might be a little bit behind" on rent and "[m]aybe" owed a few hundred dollars. *Tr. Vol. 2* at 6. Even assuming Landlord was entitled to terminate Jones' lease for nonpayment

---

[2] During the damages hearing two months later, the trial court admitted the December 2022 lease as Plaintiff's Exhibit 1, and Perkins testified it converted to a month-to-month tenancy after it expired. But this information was not before the trial court when it decided possession at the first hearing, and the trial court twice stated during the damages hearing it was not rehearing the possession claim.

of rent based on this equivocal testimony, there is still no evidence in the record that Landlord provided her with statutorily required notice of termination. Under our landlord-tenant statutes, a landlord may terminate a lease for non-payment of rent after giving the tenant ten-day notice of termination and an opportunity to cure. *See* Ind. Code § 32-31-1-6 (2002) ("If a tenant refuses or neglects to pay rent when due, a landlord may terminate the lease with not less than ten (10) days notice to the tenant unless: (1) the parties otherwise agreed; or (2) the tenant pays the rent in full before the notice period expires."); *see also* I.C. § 32-31-1-7 (prescribing contents of ten-day notice). In the complaint, Landlord claimed it delivered a "notice to vacate" on October 18, 2024. *Appellant's App. Vol. 2* at 7. But again, statements in the complaint are not evidence. Landlord did not testify to the procedures it followed before pursuing eviction. And Jones' testimony suggests she was unaware Landlord was pursuing eviction until she received notice of the lawsuit.

[19] In sum, Landlord failed to present evidence to support its claims. The trial court's immediate questioning of Jones and reliance on Jones' equivocal testimony improperly shifted the burden to Jones to make Landlord's case for eviction. As a result, there are serious evidentiary gaps which undermine our confidence in the order of possession, and Jones has made a *prima facie* showing she is entitled to reversal. *See, e.g., Muldowney*, 83 N.E.3d at 132–33 (observing "the trial court's informality went too far" where "it appears to have based its judgment [on a claim for possession] strictly upon the facts alleged in the complaint and unsworn statements of [the tenant's] counsel and [the

landlord]"); *Harris v. Lafayette LIHTC, LP*, 85 N.E.3d 871, 877 (Ind. Ct. App. 2017) (holding the trial court improperly shifted the burden of proof to the tenant where there was no documentary evidence establishing the tenant owed the landlord money, the trial court swore in no witnesses, and by the end of the hearing, the landlord failed to establish the tenant owed it money).

## The trial court's conduct at the possession hearing denied Jones due process of law.

[20] In addition to improper burden shifting, Jones contends the trial court's conduct of the hearing denied her due process. The Fourteenth Amendment to the United States Constitution prohibits a state from depriving any person of "life, liberty, or property, without due process of the law." U.S. Const. amend. XIV, § 1. Due process generally requires notice, an opportunity to be heard, and an opportunity to confront witnesses. *Morton*, 898 N.E.2d at 1199. The opportunity to be heard is a fundamental requirement of due process, and this principle includes an opportunity to present every available defense. *Id*.

[21] The transcript of the possession hearing is five and one-half pages long and takes less than five minutes to read aloud. From the outset, the hearing proceeded as though Landlord was entitled to an order of possession: it began not with Landlord's attorney presenting evidence, but with the trial court immediately questioning Jones about rental assistance. The trial court pressed Jones regarding when she planned to vacate—before establishing Landlord's right to possession. The trial court then asked Jones to "agree" if she was behind on rent; after Jones responded by alleging Landlord was charging a

month's rent in advance to inflate the arrears calculation, the trial court asked her to "take that one month out of consideration for the moment." *Tr. Vol. 2* at 6. This line of questioning appears designed to elicit a concession from Jones and gives the impression of the trial court acting as an advocate for Landlord rather than a neutral arbiter.

[22] Jones also attempted to raise a defense related to the condition of the property. She mentioned she had "proof" regarding a gas leak and indicated gas service was disrupted. *Id.* at 5. In Indiana, a landlord has a statutory obligation to deliver rental premises in a safe, clean, and habitable condition, and provide and maintain certain safe, working systems in the rental premises, including a heating system sufficient to adequately supply heat at all times. *See* I.C. § 32-31-8-5 (2002). In addition, "Indiana courts have recognized the contractual nature of leases and the applicability of the law of contracts to leases." *King v. Conley*, 87 N.E.3d 1146, 1152 (Ind. Ct. App. 2017), *trans. denied*. Under general principles of contract law, a "party first guilty of a material breach of contract may not maintain an action against or recover damages from the other party to the contract." *Ream v. Yankee Park Homeowner's Ass'n*, 915 N.E.2d 536, 547 (Ind. Ct. App. 2009), *trans. denied*. Accordingly, a tenant's allegation that a landlord failed to deliver or maintain a rental property in safe, habitable condition may be a defense to a breach of contract claim brought for nonpayment of rent. *See, e.g., Wang v. Sun*, 212 N.E.3d 1252, 1260 (Ind. Ct. App. 2023) (Tavitas, J., concurring in part, dissenting in part) (observing a tenant "should not be on the hook for failing to pay rent" after her landlord first

breached the lease by failing to deliver the property in a safe, clean, and habitable condition, so long as tenant gave landlord notice and sufficient time to repair it). Jones' claim of a gas leak was relevant to Landlord's breach of contract and possession claims, and Jones should have been given an opportunity to present her defense. The trial court, however, did not even acknowledge her argument during the possession hearing.[3]

[23] In addition to her complaints about the property, Jones also claimed she did not have notice of eviction. She disputed the amount of back rent owed, insisted she was making payments and actively seeking assistance, and claimed she had "receipts" showing payments. *Tr. Vol. 2* at 5. Despite these disputed facts, Landlord offered no evidence it delivered the ten-day notice to terminate for nonpayment of rent and failed to submit an accounting to support its arrears calculation. And because no representative of Landlord appeared, much less testified, Jones was denied an opportunity to confront witnesses against her.

[24] In *Morton*, our Supreme Court reviewed a tenant's claim that a trial court denied him an adequate opportunity to present a defense to his landlord's ejectment claim and therefore violated his due process rights. 898 N.E.2d at 1199. The Court held that where the transcript indicated "the hearing proceeded from the onset under the expectation that [the landlord] was entitled

---

[3] The trial court heard some of Jones' arguments about the property condition during the damages hearing, and Landlord offered rebuttal through Perkins' testimony. But again, the trial court was clear during the second hearing it was not permitting the parties to relitigate possession, and Jones had already been evicted at that time.

to an order of immediate possession," the trial court informed the tenant the parties "would have to agree on a move-out date before [the tenant] was afforded an opportunity to present a defense," and the court's statements indicated "inattention to [the tenant's] defenses," the court's conduct of the hearing denied the tenant due process. *Id*. at 1200. We find the same factors are present here and conclude the trial court's conduct of the possession hearing denied Jones due process of law, resulting in an unlawful eviction.

## The trial court erred by prospectively declaring Jones' personal property abandoned and disposable.

[25] Jones next argues the trial court erred by declaring her personal property abandoned and disposable when it entered the order of possession. Under the landlord-tenant statutes, "a tenant's personal property is considered abandoned if a reasonable person would conclude that the tenant has vacated the premises and has surrendered possession of the personal property." I.C. § 32-31-4-2 (2007). Further, if a landlord is awarded possession, "the landlord *may seek an order* from the court allowing removal of a tenant's personal property." *Id*. (emphasis added). Read together, the statutes do not contemplate abandonment to be determined prospectively, that is, before a tenant has vacated the premises. And as Jones points out, her testimony cannot reasonably be read to indicate an intent to surrender possession of her personal property. Jones testified she expected a wheelchair to be delivered to the rental house in the next month and was not sure if she could redirect the delivery without substantial delay in receiving necessary medical equipment. We

therefore hold the trial court erred in declaring Jones' personal property abandoned and disposable at a future date.

## The trial court erred in its handling of Jones' counterclaim.

We turn now to Jones' final issue: the trial court's handling of her counterclaim. Our review of the record raises numerous concerns, leading us to conclude the trial court mishandled the claim.

First, the trial court questioned whether Jones even filed a counterclaim, observing she "really wrote a letter addressed to the court" even though it was captioned and docketed as a counterclaim to be heard at the February 4 hearing. *Tr. Vol. 2* at 37. A counterclaim in small claims court must contain a "brief statement of the nature and amount of the claim[.]" S.C.R. 2(B)(4); *see* S.C.R. 5 (providing a "counterclaim must conform with the requirements of S.C. 2(B)(4)."). This is an even "more relaxed standard" than would be required to state a claim in an ordinary civil action governed by the Indiana Trial Rules, and "may be met by setting forth facts sufficient to identify the dispute, even if facts essential to recovery are not alleged." *Niksich v. Cotton*, 810 N.E.2d 1003, 1006 (Ind. 2004). In her filing, Jones alleged facts related to habitability of the property (disruptions to gas and water service), that she incurred inflated utility bills caused by maintenance issues, and Landlord's accounting was erroneous. Jones also requested monetary damages.[4] Jones'

---

[4] It appears Jones requested more than the small claims court jurisdictional limit, currently $10,000. *See* I.C. § 33-28-3-4 (2021) (jurisdiction of small claims docket in circuit courts). We remind Jones that "[a]ny

filing set forth sufficient facts to identify a dispute and therefore to state a counterclaim under the small claims rules.

[28]     Landlord then objected to the trial court hearing the counterclaim for lack of notice. The trial court made a few statements indicating Jones did not properly serve her counterclaim on Landlord. The small claims rules about counterclaims provide:

> If the defendant has any claim against the plaintiff, the defendant may bring or mail a statement of such claim to the small claims court within such time as will allow the court to mail a copy to the plaintiff and be received by the plaintiff at least seven (7) calendar days prior to the trial. If such counterclaim is not received within this time the plaintiff may request a continuance pursuant to [Small Claims Rule] 9.

S.C.R. 5. It was therefore the trial court's responsibility to mail a copy of Jones' counterclaim to Landlord, and Landlord's remedy for lack of notice was to request a continuance. *See id*.

[29]     Finally, after telling Jones her claim was insufficient and not properly served, the trial court explained, "as I read through your letter[, m]uch of what . . . you have said today, your testimony is reflected in your letter, and I've kinda heard what the circumstances are . . . and I don't know that that's going to impact my decision today in any regard." *Tr. Vol. 2* at 37. This statement gave the

---

defendant pursuing a counterclaim to decision waives the excess of the defendant's claim over the jurisdictional maximum of the small claims docket and may not later bring a separate action for the remainder of such claim." S.C.R. 5(B).

impression the trial court *was* hearing the counterclaim but found Jones' arguments unpersuasive. The trial court then pronounced judgment in Landlord's favor, although no written order or entry on the CCS indicates a disposition on the counterclaim. We agree with Jones the trial court "functionally dismissed" or denied her claim—without a meaningful hearing. *Appellant's Br.* at 26. We therefore remand with instructions to reinstate Jones' counterclaim.

## Conclusion

[30] Landlord failed to carry its burden to establish its right to possession, and the trial court improperly shifted the burden to Jones to prove Landlord's claim. In addition, the trial court's hearing procedures denied Jones due process of law. The trial court erred in prospectively declaring Jones' personal property abandoned and in its handling of Jones' counterclaim. Accordingly, we reverse the trial court's order of possession (including disposition of Jones' personal property) and the subsequent award of damages, costs, and attorney fees to Landlord, and remand with orders to reinstate Jones' counterclaim.

[31] Reversed and remanded.

Tavitas, C.J., and Bailey, J., concur.

ATTORNEYS FOR APPELLANT

Megan Stuart
Jennifer W. Terry
Indianapolis, Indiana

Renee Skeete
Berrien Springs, Michigan